WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-21-01242-001-TUC-JCH (EJM) |
| Plaintiff, | **ORDER** |
| v. | |
| Gregory Dwayne Ramos, | |
| Defendant. | |

Trial is set to begin June 26, 2023. *See* Doc. 79. Before the Court are Defendant's pretrial motions including his: (1) "Motion in Limine Under Daubert and Federal Rule of Evidence 702" ("Motion I") (Doc. 76); and (2) "Motion in Limine to Preclude or Limit the Government's Use of His Prior Felony Convictions for Impeachment Purposes Under FRE 609" ("Motion II") (Doc. 73). For the following reasons, the Court denies Motion I and grants Motion II.[1]

**I.  Allegations**

On May 3, 2021, Defendant was traveling westbound on State Route 86 in North Komelik, Arizona. Doc. 1 at 1. United States Border Patrol Agents ("agents") noticed Defendant's sedan "appeared to be heavily laden and the rear suspension appeared to be

---

[1] In reviewing the docket, the Court has identified unresolved motions including: (1) the government's "Motion to Produce Reciprocal Discovery," filed at Docket No. 30; and (2) Defendant's "Motion in Limine re: A-File Documents" filed at Docket No. 41. It appears both motions were mooted by subsequent discovery and neither party referenced these motions during the Status Conference on January 12, 2023. As such, the Court denies as moot both motions. To the extent matters remain unresolved, the parties have leave to raise those issues subject to the pretrial deadlines referenced in the Court's Amended Trial Scheduling Order (*See* Doc. 81).

fully compressed." *Id.* Agents followed Defendant to the Archie Hendricks Skilled Nursing Facility, located near the intersection of Federal Route 15 and Federal Route 34 on the Tohono O'odham reservation, where he parked and exited his car. *Id.* Agents found two undocumented noncitizens in the trunk and three undocumented noncitizens wearing camouflage inside the car. *Id.* Agents arrested Defendant at the Nursing Facility. On June 2, 2021, a grand jury returned a three-count indictment charging Defendant with Conspiracy to Transport Illegal Aliens (one count) and Transportation of Illegal Aliens (two counts) in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(ii), 1324(a)(1)(B)(i), and 1324(a)(1)(B)(ii). Doc. 7.

## II.   Motion I

Defendant moves to limit or preclude the testimony of the government's expert witness, Special Agent Nestor Claudio ("Agent Claudio"). Doc. 76. On July 29, 2022, the government gave notice of Expert Witnesses, (Docs. 45, 46), including Agent Caruso. Agent Caruso is expected to testify about alien smuggling organizations and their methods of operation. Doc. 27 at 1.  Specifically, Agent Caruso's testimony will cover "…how alien smugglers recruit clients, transport aliens, use stash houses, coordinate the movement of aliens with phones, and receive payment from the aliens and disperse it to members of the organization." *Id.* Agent Claudio will also testify about how such organizations compartmentalize different roles and use certain tactics to evade law enforcement. Doc. 27 at 2. Defendant seeks to preclude Agent Claudio from testifying about human smuggling organization structures, arguing that the government has not carried its burden to prove that the proffered testimony is admissible under *Daubert* or Federal Rule of Evidence 702. Doc. 76 at 9. For the following reasons, the Court finds that Agent Claudio's proposed testimony meets Rule 702's requirements and denies Motion I.

### A. Legal Standard

Under Rule 702, the government must demonstrate that a proposed expert witness is qualified to render an opinion, the proposed testimony is reliable, and that the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue."

Fed. R. Evid. 702. A district court has discretion to exclude even relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

A district court's decision to admit or exclude expert testimony focuses on the opinion's relevance and reliability. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The Court has "broad discretion," both in deciding whether the evidence is reliable and in deciding how to test for reliability. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). In *Daubert*, the Supreme Court listed various factors that might apply in determining whether a particular scientific theory or technique is reliable: (1) if it can be tested, (2) if it has been subject to peer review, (3) its error rates, (4) if the standards controlling its operation are maintained, and (5) if it has gained "acceptability" in the relevant scientific community. *Daubert*, 509 U.S. at 573–94. This test is a flexible inquiry and is not a necessary nor an exclusive list applying to all experts or to every case. *Id.*; *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 141 (1999). *Daubert*'s general holding also applies to technical and other specialized knowledge, not just scientific knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). The Ninth Circuit has recognized that these factors do not strictly apply to testimony "whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Hankey*, 203 F.3d at 1169. Thus, an expert opinion's reliability may be supported by knowledge and experience. *Cf. id.* at 1168–70 (finding gang expert qualified based on years of experience working with gangs).

The Ninth Circuit has warned about the potential prejudice from using expert testimony on an organization's modus operandi if such testimony fails to inform the jury and conceptualize the defendant's actions. For example, evidence about the structure of a criminal organization is highly prejudicial and non-relevant in non-conspiracy cases. *United States v. Varela-Rivera*, 279 F.3d 1174, 1179 (9th Cir.2002) ("[E]xpert testimony on the modus operandi of drug trafficking organizations is inadmissible in cases where, as

here, the defendant is not charged with conspiracy to distribute drugs."); *United States v. Pineda-Torres*, 287 F.3d 860, 864 (9th Cir.2002) (same); *United States v. Vallejo*, 237 F.3d 1008, 1015–17 (9th Cir. 2001) (same). Similarly, in cases where the defendant is charged with conspiracy related to alien smuggling, expert testimony about methods used by alien trafficking organizations will likely help inform the jury and conceptualize the defendant's actions. *United States v. Torralba-Mendia*, 784 F.3d 652, 663 (9th Cir. 2015) (explaining that expert testimony about the smuggling organization's methods helped prove the existence of a conspiracy and put the defendant's actions in context).

### B. Analysis

#### 1. Qualifications

Defendant contends that Agent Claudio "has never been found reliable on the topic of alien smuggling organizations operating on tribal lands in the Sells area." Doc. 76 at 9. Defendant also argues that Agent Claudio's military background and 20 years of general law enforcement experience has no bearing on alien smuggling activity and that his CV lacks any graduate degrees, speaking engagements, or publications related to alien smuggling organizations. *Id.* at 8–9.

Here, as an initial matter, the trial court must determine whether the witness is qualified as an expert by "knowledge, skill, experience, training or education." Fed. R. Evid. 702. Because the Rule "contemplates a broad conception of expert qualifications," only a "*minimal foundation* of knowledge, skill, and experience" is required. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015-16 (9th Cir. 2004) (emphasis in original) (internal citation and quotation omitted). A lack of particularized expertise goes to the weight of the testimony, not its admissibility. *See United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993). Agent Claudio has 14 years of experience in federal law enforcement: he began working with the United States Border Patrol in 2008 and began working with Homeland Security Investigations ("HSI") in 2015. Doc. 78 at 3–4. He has completed specialized case work and investigations into human smuggling organizations in southern Arizona including the San Miguel and Sells areas. *Id.* at 5 ("[Agent Claudio] is

familiar with how alien smuggling operations work all across southern Arizona, including the San Miguel and Sells areas where he worked in an undercover capacity.") As the government notes, "[h]e has investigated alien smuggling operations as a lead case agent, an undercover agent, a field agent, an agent with the Disrupt Unit, and during a detail to an intelligence assignment specializing in field intelligence collections." *Id.* He has observed active smuggling operations and routes firsthand doing surveillance and reconnaissance in the field and through technical intelligence gathering. *Id.* He has led multiple undercover operations targeting human smuggling organizations within the jurisdiction of multiple HSI Offices throughout the United States. *Id.* He has participated in human smuggling investigations leading to apprehensions and reviewed numerous reports detailing interviews and debriefings of people who were being smuggled into the United States, as well as suspects and defendants who were transporting humans or otherwise assisting human smuggling events. *Id.* Defendant fails to explain how HSI operations on tribal lands are distinct from those conducted on non-tribal lands, or how Agent Claudio's work in San Miguel or Sells would be materially different from his work in other areas of southern Arizona.

### 2. Reliability

*Daubert* instructs that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 595. Therefore, the proper place to set forth contrary evidence challenging the reliability of methodology is at trial. *See City of Pomona v. SQM North American Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) ("Challenges that go to the weight of evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury.").

Here, the Court is not persuaded by Defendant's additional arguments. Rule 702 does not require an expert witness to testify a specific number of times before they can be qualified as an expert witness and before their testimony can be found reliable. *See*

1  *generally* Fed. R. Evid. Rule 702. Defendant also points to Agent Claudio's education, lack
2  of speaking engagements, and training. These challenges may be raised during cross-
3  examination and through the presentation of contrary evidence. Defendant's arguments go
4  to weight, rather than admissibility. At trial, if Agent Claudio lays the necessary foundation
5  regarding his qualifications, the Court will allow him to testify as an expert on alien
6  smuggling. This is a preliminary determination. The Court will more fully consider the
7  proper scope and relevancy of Agent Claudio's testimony at trial. Accordingly, the Court
8  **denies** Motion I.

## III.  Motion II

Defendant moves to preclude or limit the government's use of his prior conviction for impeachment purposes. Doc. 73. In 1998, the Sacramento County Superior Court, Sacramento, California, convicted Defendant of Manslaughter, Stalking, and Burglary in the First Degree and sentenced him to 172 months in prison. Doc. 77 at 2. Defendant was released from custody and placed on parole on May 19, 2011; Defendant's parole was discharged on July 8, 2014. *Id.* On January 13, 2022, the government filed a notice of intent to use the 1998 prior felony conviction for impeachment purposes under Fed. R. Evid. 609. Doc. 31. Defendant objected. Doc. 73. The government filed a response indicating that it would withdraw its notice but reserved the right to impeach Defendant with his prior conviction if the Defendant "introduces testimony implicating his past criminality, such as introducing a claim of past law-abidingness[.]" Doc. 77 at 3. At the Status Conference on January 12, 2023, the government reiterated its position, arguing that the conviction would not be raised unless defense opened the door. *See* Hr'g Tr., *USA v. Gregory Dwayne Ramos*, 4:21-cr-01242-001-TUC-JCH (January 12, 2023).

### A. Legal Standard

Evidence that a witness has been convicted of a crime, punishable by imprisonment exceeding one year, is admissible for purposes of attacking a witness's truthful character. Fed. R. Evid. 609(a)(1)(A). Prior convictions involving elements or admitted acts of dishonesty or false statements may also be used to impeach, regardless of the length of

incarceration. Fed. R. Evid. 609(a)(2). Under Rule 609(b), however, prior convictions older than ten years are admissible for impeachment purposes if their probative value substantially outweighs any prejudicial effect and reasonable written notice of intent to use is given. Fed. R. Evid. 609(b).

The Ninth Circuit has outlined five factors for courts to consider when balancing the probative value of evidence against the prejudicial effect under Rule 609: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the party's testimony; and (5) the centrality of the party's credibility. *United States v. Hursh*, 217 F.3d 761, 768 (9th Cir. 2000). Under Rule 609(b), the Ninth Circuit has cited favorably to the committee notes from the adoption of the rule, which state in part that "[i]t is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." *Simpson v. Thomas*, 528 F.3d 685, 690 (9th Cir. 2008) (quoting Fed. R. Evid. 609 advisory committee notes).

### B. Analysis

Here, Defendant's 1998 conviction will be excluded under Rule 609(b). At trial, Defendant or another defense witness could conceivably "open the door" for the conviction to come into evidence by making assertions that are directly contradicted by the conviction's existence. But if Defendant simply testifies about the facts in this case, the conviction will not be admitted. Therefore, the Court **grants** Motion II.

///
///
///
///
///
///
///
///

IV. Order

Accordingly,

**IT IS ORDERED:**

(1) **DENYING** Defendant's "Motion in Limine Under Daubert and Federal Rule of Evidence 702" (Doc. 76);

(2) **GRANTING** Defendant's "Motion in Limine to Preclude or Limit the Government's Use of His Prior Felony Convictions for Impeachment Purposes Under FRE 609" (Doc. 73); and

(3) **DENYING AS MOOT** the government's "Motion to Produce Reciprocal Discovery," (Doc. 30); and Defendant's "Motion in Limine re: A-File Documents" (Doc. 41). Parties have leave to refile these motions subject to the Amended Trial Scheduling Order deadlines (Doc. 81).

Dated this 20th day of March, 2023.

Honorable John C. Hinderaker
United States District Judge