WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-21-01242-001-TUC-JCH (EJM) |
| Plaintiff, | **ORDER** |
| v. | |
| Gregory Dwayne Ramos, | |
| Defendant. | |

In this case, Defendant Ramos was arrested while transporting five camouflaged undocumented noncitizens in his sedan—two in the trunk and three in the back seat. Doc. 1 at 1. Before the Court is the Government's "Motion in Limine to Limit Defense Expert Woo's Testimony." Doc. 137. The Government seeks to prohibit Mr. Woo from opining that Ramos was a "blind mule," or unwitting courier. *See generally id.* On December 15, 2023, the Court held a Daubert hearing at which Ret. HSI SSA Perry Woo provided testimony. Doc. 157. Defendant subsequently filed an apparently related "Motion to Take Judicial Notice Under Federal Rule of Evidence 201." Doc. 158. The Court will grant the Government's Motion (Doc. 137) and deny as moot Defendant's Motion (Doc. 158).

## I.   Background

In May 2023, Defendant disclosed that Mr. Woo expected to offer "opinions about human smuggling organizations and their recruitment, transportation and concealment of aliens, their occasional use of 'blind mules' or unwitting couriers, their employment of paid or unpaid contacts, their methods of coordinating the movement of aliens by cell phone

and their methods of payment." Doc. 104 at 4. Defendant also disclosed that Mr. Woo "is expected to testify that human smuggling organizations have been known to employ 'blind mules' or unwitting drivers to transport aliens and/or controlled substances across and/or within the borders of the United States and that human smuggling organizations have been known to coordinate the movement of aliens using cell phone technology during smuggling operations." *Id.*

In October, Defendant filed a Supplemental Notice of Mr. Woo's testimony. Doc. 136. In the Supplement, Defendant provides Mr. Woo's "complete statement" of his anticipated opinions. *Id.* at 3. These anticipated opinions include the following:

(1) Human smuggling and trafficking organizations have been known to exploit unwitting couriers to transport undocumented migrants and controlled substances into the United States, and these organizations benefit from exploiting unwitting couriers in several ways;

(2) Human smuggling "may quickly turn into a human trafficking operation," such as when undocumented migrants are held hostage for a higher smuggling fee, or female undocumented migrants are forced into prostitution to pay their smuggling fee; and

(3) "There are sufficient grounds to support a 'blind mule' or unwitting driver theory [in this case]."

Doc. 136-1 at 1–2.[1] As to his opinion about the use of unwitting couriers generally, Mr. Woo observes that commercial truck drivers were used as unwitting couriers to transport undocumented noncitizens in a recent Arizona case. *Id.* (citing *United States v. Olivas*, No. CR-19-02942-TUC-JGZ (LAB) (D. Ariz. Nov. 21, 2022)). Mr. Woo also observes that

---

[1] The Court supplied these as "opinions at issue" to the parties ahead of the hearing and marked them as "Defense Exhibit 2." *See* Doc. 157 at 8:1–10. The Government does not challenge the first opinion, Doc. 157 at 4:9–19, and challenges the second only to the extent Mr. Woo intends to discuss human trafficking or sexual exploitation. *Id.* at 5:4–19. Defense counsel stated that the defense will not discuss human trafficking at trial except to the extent the methodology is similar. *Id.* at 5:20–6:13. And the defense will not discuss sexual exploitation. *Id.* Given these statements, the Court will grant the Government's motion as to the second opinion. Mr. Woo may discuss human trafficking consistent with this Order, and Mr. Woo may not discuss sexual exploitation.

"[Transnational Criminal Organizations] have also been known to exploit rideshare drivers such as Uber or Lyft drivers by exploiting them as unwitting couriers." *Id.* (citing an article from https://adnamerica.com). As to his opinion about this case supporting an unwitting courier theory, Mr. Woo's asserts his opinion is based on his review of "the transcripts of the superseding indictment and other documents submitted to me, and familiarizing myself with the facts of this case." *Id.* at 2.

In its motion to limit Mr. Woo's testimony, the Government objects that Mr. Woo's opinions about human smuggling "turning into" human trafficking risks confusing or misleading the jury because this case does not involve female undocumented migrants or any evidence of human trafficking. Doc. 137 at 6. The Government also objects that Mr. Woo's opinion "there are sufficient grounds to support a 'blind mule" theory in this case" is unreliably based on a factually different case and inadmissible hearsay. Doc. 137 at 5–6. Defendant responds that any lack of particularized expertise on Mr. Woo's part "goes to the weight of the testimony, not its admissibility." Doc. 148 at 6.

At the December 15 hearing, Mr. Woo testified that he believes Defendant was an unwitting courier. He explained that his review of the case included the Border Patrol report on Defendant's surveillance and arrest, an audio recording of co-Defendant Perez's interview with law enforcement in May 2023, several court documents, and the text messages sent from Defendant's phone. Doc. 157 at 48:14–51:13. To support his conclusion that "there are sufficient grounds to support a blind mule theory," Mr. Woo explained, essentially, that blind mules are highly useful to cartels and may be implicated any time a person with a nondescript vehicle might be tricked or exploited due to that person's financial need. *See* Doc. 157 at 32:1–33:15, 41:14–45:3.

**II.  Legal Standards**

**Relevance.** Relevant evidence is generally admissible. Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make a consequential fact more or less probable. Fed. R. Evid. 401. But the Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of confusing the issues or misleading the jury. Fed.

R. of Evid. 403.

**Expert Testimony.** A witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may testify if, among other requirements, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). A trial court has broad discretion to determine whether a witness is "qualified as an expert by knowledge, skill, experience, training, or education." *See* Fed. R. Evid. 702 Notes of Decisions §§ 52–53.

Expert testimony must be reliably based on sufficient facts and data. Fed. R. Evid. 702(b)–(d); *United States v. Alahmedalabdaloklah*, 76 F.4th 1183 (9th Cir. 2023). To ensure reliable methods, the court assesses whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993); *Desrosiers v. Flight Int'l of Fla. Inc.*, 156 F.3d 952, 961 (9th Cir. 1998). An expert may not merely transmit testimonial hearsay, *United States v. Shih*, 73 F.4th 1077, 1098 (9th Cir. 2023) (citing *United States v. Vera*, 770 F.3d 1232, 1237 (9th Cir. 2014)), but may rely on hearsay so long as the expert "appli[es] his training and experience to the sources before him and reach[es] an independent judgment." *Vera*, 770 F.3d at 1237 (quoting *United States v. Gomez*, 725 F.3d 1121, 1129 (9th Cir. 2013)) (alteration in original).

**III.   Analysis**

**A.   Defendant sufficiently complied with Fed. R. Crim. P. Rule 16.**

The Court is not persuaded by the Government's arguments as to the sufficiency of Defendant's notices under Rule 16 of the Federal Rules of Criminal Procedure. Rule 16 requires that a defendant disclose a complete statement of all opinions that the defendant will elicit from its expert witness, and the bases and reasons for them. Fed. R. Crim. P. 16(b)(1)(C)(iii). The Government argues that Defendant's Supplemental Notice does not provide the basis for Mr. Woo's opinion that there are sufficient grounds to support an unwitting courier theory in this case. Doc. 137 at 4–5. Even if Defendant's Supplemental

Notice were deficient, the Court and the Government subsequently established the basis for Mr. Woo's opinion at the December 15 hearing. The Government will not be prejudiced in its preparation for trial. And the Government's concerns are mooted by the Court's disposition below, § III.B. For those reasons, the Court declines to impose sanctions for Defendant's alleged Rule 16 shortcomings.

### B. Mr. Woo may not testify that the evidence supports an unwitting courier theory in this case.

The Court will grant the Government's motion as to Mr. Woo's opinion that there are sufficient grounds in this case to support an unwitting courier theory. First, expert witnesses in a criminal case may not give an opinion that a defendant did or did not have a mental state that constitutes an element of the crime charged or of a defense. *See* Fed. R. Evid. 704(b). Here, Defendant is charged in part with knowing conspiracy. *See* Doc. 105 at 1–2. Defendant will apparently offer evidence that he was told he was going to pick up day workers near the Arizona-Mexico border and to bring them to Phoenix to work. Defendant will argue he was shocked when five individuals dressed in camouflage piled into his car and trunk when he stopped to pick them up in a remote area in the Arizona desert. Whether or not Defendant acted "knowingly" or "unwittingly" is a question for the jury to answer, and the jury does not need expert testimony to understand the evidence and arguments regarding Defendant's state of mind. Allowing an expert to comment on the evidence and give opinions about the Defendant's state of mind or witness credibility would invade the province of the jury, waste time, and could mislead or confuse the jury.

Second, Mr. Woo's opinions in this regard are not reliably based on facts and data. The Arizona case he cites involved markedly different circumstances from this case. There, an unwitting courier theory was supported by the fact that the vehicle was a commercial truck parked at a truck stop with "lax" security, where several parked truck trailers were unlocked. *United States v. Olivas et al.*, CR-19-02942-001-TUC-JGZ (LAB) (D. Ariz. Nov. 21, 2022), Doc. 319 at 2. The defendant driver claimed to be unaware that undocumented migrants had been loaded into his truck's trailer. *Id.* In other words, the driver claimed he was "blind" to the presence of the illegal aliens. Here, by contrast,

Defendant was arrested with three camouflaged undocumented migrants ducking down in the back seat of his sedan, and two more concealed in the trunk. Mr. Woo conceded the fact pattern presented here—pickup at a remote location near the Mexican border coordinated by phone and text with Mexican and American contacts resulting in aliens who had crossed the border on foot being loaded into a vehicle for transportation north—is very common in alien smuggling cases in Southern Arizona. *Id.* at 13:10–14:9. But, notwithstanding Mr. Woo's decades of experience and the frequency with which this same fact pattern plays out every day in Southern Arizona, Mr. Woo admitted he had never heard of an instance where an alien smuggling organization had exploited an unwitting courier in this context. Doc. 157 at 28:25–29:13, 35:23–36:10.

Similarly, the article Mr. Woo cites is hearsay involving different circumstances, namely the exploitation of unwitting rideshare drivers. The article also does not support Mr. Woo's statement that rideshare drivers "have … been known" to be unwitting couriers. Doc. 136-1 at 2. The one-page article merely reports that an Uber driver was arrested while transporting undocumented immigrants, and the author comments that the evidence "seems to indicate" the driver was unaware of his passengers' status. https://adnamerica.com/en/texas/human-smugglers-requested-uber-transport-migrants-driver-caught.  And Mr. Woo did not say what independent judgment he added to the article, such as how it applied to the facts of this case. *See* Doc. 157 at 30:12–33:15. Moreover, Defendant does not claim he was a rideshare driver and there is no evidence that he was. Thus, Mr. Woo has no basis to assert that rideshare drivers have been used as unwitting couriers or that this case has anything to do with rideshare drivers.

Ultimately, Mr. Woo's opinion is based primarily on two things, neither of which provides a reliable basis under the facts of this case. First, Mr. Woo takes a broad view of unwitting couriers. In his view, an unwitting courier may be implicated any time a financially needy person has a nondescript vehicle and a driver's license and is willing to correspond electronically rather than in person. *See* Doc. 157 at 32:1–33:15, 41:14–45:3. These so-called "elements" make a person susceptible to being tricked or exploited. *See id.*

But those same "elements" are frequently present in many of the human smuggling cases that comes before this Court. Without more, Mr. Woo's "elements" are not a reliable basis to conclude that there are "sufficient grounds to support a blind mule theory."

Second, Mr. Woo's opinion is based on evidence that Defendant thought he was going to pick up day workers and expressed surprise when he stopped in the remote Arizona desert and five camouflaged men climbed into the back seat and trunk of his car. Mr. Woo believed this evidence was in the form of text messages sent by Defendant. Doc. 157 at 54:9–12. The Government asserted that the evidence—as with most of the other evidence supporting Mr. Woo's opinion—came from co-Defendant Perez's interview in May 2023. *Id.* at 54:20–57:9. Whatever its origin, permitting Mr. Woo to say that this is an unwitting courier case or that the defense is "plausible" based upon his assessment of Defendant's reaction runs a substantial risk of crossing the line into vouching and commenting on a defendants' state of mind. Defense counsel urged that an expert was needed "to put it into some type of reasoning that [the jury] can understand that [unwitting couriers exist and are] a possibility[.]" Doc. 157 at 67:12–23. The Court disagrees. The jury already knows that people can be tricked or exploited. The lawyers can argue whether Defendant was one of those people and the jury can assess the credibility of the witnesses and the lawyers. Mr. Woo's implicit opinion is that the defense witnesses are credible and his testimony on this subject is not necessary or appropriate.

For the foregoing reasons, the Court will grant the Government's Motion as to Mr. Woo's opinion that "there are sufficient grounds for a blind mule theory in this case." Mr. Woo may not give that opinion or any similar opinion. Mr. Woo may testify to what a "blind mule" is and how "blind mules" have been used by alien smuggling organizations. He may testify about the specific circumstances under which he is aware of plausible assertions that alien smuggling organizations have used "blind mules" and vice versa. Mr. Woo may not draw on the article discussing rideshare drivers.

The Government's expert is correspondingly limited. To the extent the Court's previous orders could be read to permit the Government's expert to say this is *not* an

unwitting courier case or comment on the evidence directly, those orders are clarified here. The Government may use its expert witness to explain in general terms how alien smuggling organizations operate in Southern Arizona and, more specifically, how alien smuggling organizations routinely recruit, employ, and pay load drivers to transport illegal aliens north who have crossed the border on foot. The expert witnesses may explain what an unwitting courier is and give specific examples where alien smuggling organizations and other criminal enterprises have, and have not, been known to use unwitting couriers. The expert witnesses may testify in general terms about the pros and cons for an alien smuggling organization when using a "blind mule" versus a knowing participant.

Ultimately, this is not a complex case. Expert witness testimony may be helpful to the jury in understanding how alien smuggling operations routinely operate in Southern Arizona and, in general terms, how "blind mules" are used in some instances. But expert witness testimony is unnecessary for the jury to understand the parties' case-specific arguments about Defendant's state of mind and whether he was a "blind mule." Based upon the evidence that has been presented to the Court to this point, allowing the experts to comment directly on that evidence or weigh in on whether Defendant's defense is "plausible" would invade the province of the jury, waste time, and might confuse or mislead the jury.

**IV.     Motion to Take Judicial Notice**

Shortly after the Daubert hearing, Defendant filed a Motion to Take Judicial Notice that appears to be an implied argument against Government's motion to limit Mr. Woo's testimony. *See generally* Doc. 158. Defendant asks the Court to notice that it previously permitted the Government's expert to testify about the possible use of an unwitting courier in this case. *Id.* at 1–2. That concern animated defense counsel's closing remarks at the Daubert hearing, where he pointed out that it would be unfair to let the Government's expert comment on the evidence in this case while prohibiting Defendant's expert from doing so. Doc. 157 at 70:12–18. As the Court explains above—and foreshadowed at the hearing, *id.* at 70:18–20—the Government's expert testimony is now limited to the same extent as

Defendant's expert testimony. The Court will therefore deny as moot Defendant's motion for judicial notice. If Defendant still feels notice is necessary, he may file a renewed motion for judicial notice.

### V.     Order

Accordingly,

**IT IS ORDERED GRANTING** the Government's Motion to Limit Expert Woo's Testimony (Doc. 137). Mr. Woo's testimony is limited consistent with this Order.

**IT IS FURTHER ORDERED CLARIFYING** the Court's previous Order (Doc. 82) to the extent that Order is inconsistent with this Order.

**IT IS FURTHER ORDERED DENYING AS MOOT** Defendant's Motion to Take Judicial Notice (Doc. 158).

Dated this 3rd day of January, 2024.

John C. Hinderaker
United States District Judge